IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Miguel Ramirez, ) | C/A No. 0:13-2458-RMG-PJG |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden, *Kershaw Correctional Institution*, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner Miguel Ramirez, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 42.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Ramirez was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 44.) Ramirez filed a response in opposition. (ECF No. 47.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Ramirez's Petition denied.

## BACKGROUND

Ramirez was indicted in January 2002 in Kershaw County for felony driving under the influence resulting in great bodily injury and felony driving under the influence resulting in death (02-GS-41-98, -99). (App. at 78-81, ECF No. 43-1 at 79-82.) Ramirez was represented by O. Lee

Sturkey, Esquire, and on May 3, 2002 entered an <u>Alford</u>[1] plea to the charges.[2]  The circuit court sentenced Ramirez to twenty-five years' imprisonment for felony driving under the influence resulting in death and a consecutive sentence of fifteen years' imprisonment for driving under the influence resulting in great bodily injury.  (App. at 23-24, ECF No. 43-1 at 24-25.)

Ramirez timely appealed and was represented by Daniel T. Stacey, Esquire, of the South Carolina Office of Appellate Defense, who filed an <u>Anders</u>[3] brief on Ramirez's behalf that presented the following question:

> Whether the court erred in sentencing appellant to the maximum available sentence where he had pleaded guilty and expressed remorse, since sentences of this type will discourage guilty pleas and up the burden on an already swamped system?

(ECF No. 43-2.)  Ramirez filed a *pro se* response to the <u>Anders</u> brief raising grounds of ineffective assistance of counsel and that his guilty plea was involuntary and unknowing.  (ECF No. 43-4.)  On May 5, 2004, the South Carolina Court of Appeals filed an order dismissing Ramirez's appeal.  (ECF No. 43-5.)  The remittitur was issued on June 8, 2004.  (ECF No. 43-6.)

---

[1] <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970).  "An <u>Alford</u> plea is an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest."  <u>United States v. Taylor</u>, 659 F.3d 339, 347 (4th Cir. 2011) (citing <u>Alford</u>, 400 U.S. at 37).

[2] In exchange for Ramirez's plea, the State dismissed five other charges—failure to stop for a blue light or siren, failure to remain at the scene for a property damage accident, operating a motor vehicle without insurance, operating a motor vehicle without a valid driver's license, and use of a vehicle without the owner's consent—and agreed to defer sentencing until a later date.  (App. at 5, ECF No. 43-1 at 6.)

[3] <u>Anders v. California</u>, 386 U.S. 738 (1967).  <u>Anders</u> requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  <u>Anders</u>, 386 U.S. at 744.



Ramirez filed a *pro se* application for post-conviction relief ("PCR") on June 3, 2004 in which he raised the following claims:

    a)  ineffective assistance of counsel,

    b)  due process violation of law,

    c)  involuntary and unknowing guilty plea,

    d)  subject matter jurisdiction,

    e)  conflict of interest with the interpreter from the she[]riff's office when the sheriff's office was going against the defendant.

(See Ramirez v. State of South Carolina, 04-CP-41-69; App. at 28-39, ECF No. 43-1 at 29-40.) The State filed a return. (App. at 41-45, ECF No. 43-1 at 43-46.) On March 17, 2008, the PCR court held an evidentiary hearing at which Ramirez appeared and testified and was represented by Tommy A. Thomas, Esquire. By order filed August 11, 2009, the PCR judge denied and dismissed with prejudice Ramirez's PCR application. (App. at 64-77, ECF No. 43-1 at 65-78.)

On appeal, Ramirez was represented by Elizabeth A. Franklin-Best, Esquire, Appellate Defender, who filed a petition for a writ of certiorari on Ramirez's behalf that presented the following questions:

    I.    Did plea counsel render ineffective assistance of counsel for failing to communicate and prepare the case with his client when he failed to obtain a proper Mam speaking interpreter, for use during discussions with his client, and when he allowed him to plead guilty, as provided for by S.C. Code Ann. § 17-1-50 (1976)?

    II.    Was petitioner's guilty plea involuntarily [sic] because petitioner could not understand the proceedings against him?

(ECF No. 43-7.) The State filed a return. (ECF No. 43-8.) On June 11, 2013, the South Carolina Court of Appeals issued an order denying Ramirez's petition for a writ of certiorari. (ECF No. 43-9.) The remittitur was issued July 1, 2013. (ECF No. 43-10.) This action followed.

**FEDERAL HABEAS ISSUE**

Ramirez's federal Petition for a writ of habeas corpus raises the following issue:

**Ground One:**   Ineffective assistance of counsel
**Supporting facts:**   Counsel failed to allow client to inspect discovery.  Counsel failed to communicate and prepare case with client.   Petitioner's guilty plea was involuntarily, unknowingly, an[d] unintelligently made.

(Pet., ECF No. 1.)

**DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.      Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 131

S. Ct. 770, 785 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 131 S. Ct. at 786-87). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 131 S. Ct. at 785. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions

in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C.     Summary Judgment Motion**

The Petition alleges that plea counsel was ineffective for failing to allow Ramirez to inspect discovery and for failing to communicate and prepare the case with Ramirez, rendering his guilty plea "involuntarily, unknowingly, and unintelligently made." (ECF No. 1 at 5.) The respondent has interpreted the Petition as alleging that plea counsel was ineffective for failing to allow Ramirez to inspect discovery and for failing to communicate and prepare the case with Ramirez without retaining an interpreter versed in the Mam language.[4] (ECF No. 43 at 10.)

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that plea counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, to prevail on a claim of ineffective assistance of counsel in connection with a

---

[4] Ramirez's response in opposition to the respondent's motion does not contradict the respondent's interpretation of the allegations in Ground One. (ECF No. 47.)



guilty plea, the Strickland test is "some what different." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000). To establish the prejudice prong of the Strickland test, a habeas petitioner who pled guilty must show " 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " Id. (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (discussing the Strickland v. Washington standard to establish ineffectiveness of counsel in the context of a guilty plea).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 131 S. Ct. at 788. The Court observed that while "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court). Having reviewed



the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland/Hill test in determining that no Sixth Amendment violation occurred.

As noted by the PCR court, testimony at the PCR hearing indicated that Ramirez speaks a language known as Mam, which is a Mayan dialect found in the northern mountains of Guatemala. (App. at 65, ECF No. 43-1 at 66; see also App. at 51, ECF No. 43-1 at 52.) While Ramirez was provided a Spanish interpreter for his plea and sentencing hearings, PCR counsel testified at the PCR hearing that Mam is significantly different than Spanish. (App. at 49, ECF No. 43-1 at 50.) Therefore, for the PCR hearing, counsel secured a Mam interpreter, and the Clerk of Court provided a Spanish interpreter so that testimony could be translated from Mam to Spanish and from Spanish to English and vice versa. (App. at 65, ECF No. 43-1 at 66; see also App. at 52-53, ECF No. 43-1 at 53-54.) Plea counsel for Ramirez failed to appear at the PCR hearing and the PCR court allowed Ramirez to proceed with his portion of the PCR action, leaving the record open to obtain plea counsel's testimony at a later date. (App. at 65-66, ECF No. 43-1 at 66-67; see also App. at 48-49, ECF No. 43-1 at 49-50.) The PCR court's order explains that hearings to obtain plea counsel's testimony were subsequently scheduled but it was determined that his presence could not be secured. (App. at 66, 70, ECF No. 43-1 at 67, 71.)

On direct examination at the PCR hearing, Ramirez testified that he entered a guilty plea on May 3, 2002. (App. at 56, ECF No. 43-1 at 57.) Ramirez denied remembering or understanding anything that happened during his guilty plea and testified that he does not understand or speak Spanish. (App. at 56-57; ECF No. 43-1 at 57-58.) Ramirez testified that he was unable to communicate with plea counsel, did not understand the court proceedings when he entered a guilty plea, and simply said "yes" to all questions. (App. at 58, ECF No. 43-1 at 59.) Ramirez further



testified that he has no formal education and could not understand any court documents shown to him. (App. at 58-59, ECF No. 43-1 at 59-60.) Ramirez testified that he could not communicate with the Spanish interpreter provided at his plea hearing and that plea counsel never provided a Mam interpreter for him. (App. at 59-60, ECF No. 43-1 at 60-61.)

As stated by the PCR court, to determine issues associated with a guilty plea, it is proper for the court to consider both the guilty plea transcript and evidence presented at the PCR hearing. See Harres v. Leeke, 318 S.E.2d 360 (S.C. 1984). In finding substantial evidence in the record to suggest that Ramirez was "able to sufficiently communicate with his [plea] counsel and understand the proceedings against him," the PCR court pointed to the plea and sentencing hearing transcripts where the original Spanish interpreter testified that he experienced no problems whatsoever in communicating with Ramirez. (App. at 71, 73, ECF No. 43-1 at 72, 74; see also App. at 2, 13, ECF No. 43-1 at 3, 14.) The PCR court found the original Spanish interpreter's testimony to be credible and correctly noted that Ramirez presented no evidence at the PCR hearing to show that the interpreter was dishonest. (App. at 72, 74, ECF No. 43-1 at 73, 75.)

The PCR court further found that, in contrast to Ramirez's testimony at the PCR hearing that he responded affirmatively to all questions during the plea hearing due to his language barrier, the plea transcript actually reflects several instances where Ramirez answered "no" to questions. (App. at 71, ECF No. 43-1 at 72.) The PCR court also highlighted the following statement made by Ramirez through his Spanish interpreter at the sentencing hearing, which reflects that Ramirez could adequately understand and communicate with the interpreter:

> He would like to state the fact that the never did it intentionally and he was fully intoxicated and has no recollection of the events that led to the tragic accident. And that he has no animosity towards anyone, much less to anyone in this country that has been so nice to him. The next thing he remembers is waking up full of bruises, cuts and abrasions. And that he sincerely regrets what happened and he would like to



> extend his condolences, heartfelt condolences to the family of the deceased. And that had it not been for the fact that he was drinking, quite likely this accident would have never happened.

(App. at 72-74, ECF No. 43-1 at 73-74; see also App. at 22, ECF No. 43-1 at 23.) Ramirez made a similar statement through his Mam interpreter at the PCR hearing during which he testified that he did not remember anything about the accident because "he was walking very drunk" and was already in jail when he "woke up" after the accident. (App. at 73, ECF No. 43-1 at 74; see also App. at 56, ECF No. 43-1 at 57.) The PCR court found the similarities between Ramirez's statements at the sentencing and PCR hearings to be a "prime example" of his ability to communicate with plea counsel and understand court proceedings via the original Spanish interpreter. (App. at 74, ECF No. 43-1 at 75.)

The PCR court also cited evidence in the plea transcript to suggest that Ramirez was sufficiently able to communicate with his plea counsel to include: (1) plea counsel's knowledge that Ramirez may want a specific individual, Reverend Cadero, to attend the sentencing hearing; and (2) plea counsel's detailed knowledge about Ramirez's upbringing and educational background. (App. at 72, ECF No. 43-1 at 73; see also App. at 12, 19, ECF No. 43-1 at 13, 20.) As noted by the PCR court, Ramirez presented no evidence or testimony at the PCR hearing to indicate that plea counsel fabricated such statements. (App. at 74, ECF No. 43-1 at 75.) Thus, the PCR court did not find credible Ramirez's testimony about his inability to communicate with plea counsel, or his inability to understand the plea and sentencing hearings with the help of a Spanish interpreter. (Id.) The court finds the PCR court's determination in this regard to be supported by the record, for all the reasons provided by the PCR court. Therefore, Ramirez has not clearly shown that the credibility determination in the PCR court's order is without support and cannot obtain habeas relief under the applicable standard. See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be

'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

Moreover, the PCR court reasonably found that Ramirez cannot satisfy the prejudice requirement under Strickland/Hill because he provided no testimony or evidence at the PCR hearing that he would not have entered a guilty plea and insisted on going to trial if he had been better able to communicate with plea counsel or understand the proceedings against him. (App. at 75, ECF No. 43-1 at 76.) Despite having a Mam interpreter at the PCR hearing, Ramirez did not identify any exculpatory or mitigation evidence that he was prevented from presenting at his plea or sentencing hearing. (App. at 76, ECF No. 43-1 at 77.)

In denying and dismissing Ramirez's application for post-conviction relief, the PCR court reasonably found

> that even if the Applicant could not understand English, he was sufficiently able to understand the proceedings against him, communicate with his attorney, and assist in the investigation and preparation of his case through the use of the original Spanish interpreter. Because the Applicant's claims of Ineffective Assistance of Counsel and Involuntary Guilty Plea are based upon the contention that he cannot understand English or Spanish, this Court further finds that Applicant is unable to show either ineffective assistance of counsel or prejudice resulting therefrom. Further, this Court finds that the Applicant has provided no testimony or evidence that, had be been able to communicate with his attorney or understand the proceedings against him, he would not have pled guilty and would have insisted on going to trial. Therefore, this Court finds that even if the Applicant had been successful in proving ineffective assistance of counsel or that his guilty plea was involuntary, he has not met his burden to prove prejudice.

(Id.)

As indicated above, upon thorough review of the parties' briefs and the record in this matter, the court finds the PCR court's analysis to be reasonable and concludes that Ramirez cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided



by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785.

In response to the respondent's motion for summary judgment, Ramirez generally opposes the respondent's motion for summary judgment but provides no factual allegations or arguments to refute the respondent's motion. (ECF No. 47.) Upon careful review of the transcripts and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Ramirez has failed to establish that plea counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Therefore, Ramirez has not shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 131 S. Ct. at 785. Accordingly, the respondent's motion for summary judgment should be granted.

### RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 42) be granted and Ramirez's Petition denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 10, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).